GREEN AND JOHNSON, D.B.A. PALACE TAXI CAB COMPANY, APPELLANTS *v.* MIDDLETON, et al., APPELLEES

No. 43277　　　　February 8, 1965　　　　171 So. 2d 500

*Laub, Adams, Forman & Truly,* Natchez, for appellants.

820

*Herring & McCoy, Frank W. Walden,* Natchez, for appellee.

PATTERSON, J.

This is an appeal by Amos Green and B. F. Johnson, d/b/a Palace Taxi Cab Company from a judgment of $3,000.00 against them in the Circuit Court of Adams County. The plaintiff recovered nothing against a co-defendant, Daniel Knowles, Jr., who, though designated as an appellee, filed no pleading in this Court.

The accident complained of occurred on East Oak Street in the city of Natchez. The street runs in a general easterly and westerly direction. Part of the street is composed of a curve, the southern edge of which is adjacent to a bayou and a utility pole. East Oak Street at the time of the accident was graveled.

B. F. Johnson, d/b/a Palace Taxi Cab Company, owned, among others, a cab which was operated by Amos Green. The plaintiff, who had called the company for transportation from her place of business to her home, was riding on the right side of the front seat as a paying passenger at the time of the accident on the afternoon of July 1, 1959. The cab, while enroute to plaintiff's destination, was driven by Green in a westerly direction along East Oak Street when it collided with an automobile driven by Daniel Knowles, Jr., who was driving in

an easterly direction at the time of the collision. There is much to be desired by way of conclusive evidence in the case so that the facts might be positively determined. From the meager evidence we reconstruct the scene as best we can.

Green, while driving in a westerly direction along East Oak Street with the plaintiff as a passenger, entered a curve in the street. The southern portion of this curve, which was to Green's left, was adjacent to a bayou and a utility pole. Simultaneously to Green's entry into the curve the automobile driven by Knowles entered the curve from the west. The automobiles collided as the left rear bumper of Knowles' automobile struck the left rear door of the cab. The most positive testimony reflecting on the incident was that of the plaintiff as to the conduct of the driver and the location of the cab at the time, ''He was driving a little too fast there and there was a steep curve and he taken too much of the road meeting another car.'' She testified that the driver had the radio transmitter of the cab in his hand at the time of the accident. The driver in his testimony does not deny that he took too much of the street, though he did testify that the street curved to his right at the site of the accident. As a matter of fact, he did not testify as to the position of his car immediately prior to the accident, that is, whether it was on the right or left side of the street. Neither did he testify as to the position of Knowles' car on the street except to say that it was coming down an incline approaching the curve.

The testimony of defendant Knowles, who in his answer pleaded negligence on the part of Green in having his cab in the middle of the street, is contradictory. He testified that he was driving in an easterly direction at an approximate speed of 25 to 30 miles per hour as he approached the curve; that the cab driven by Green was on the right side of the street coming directly to

him, and again that Green was totally on the right side of the street which we note is in derogation of his answer. He further testified that he Knowles was as far to the right as he could get without running into the bayou. This testimony, if believed, would have indicated that there was in fact no collision as there was ample room for the cars to pass if each was on its proper side of the street. As a matter of fact, the defendant in his answer alleges affirmatively that he did not know whether the cars actually struck one another. The preponderance of the evidence indicates, however, that there was such collision. Knowles further testified that he did not see a pedestrian on the right side of the street near the bayou and did not know until after the accident that his automobile struck this pedestrian and knocked him into the bayou. The automobile then struck a utility pole which was located to the right of Knowles' side of the street, which brought his car to a halt.

The evidentiary facts are thus in dispute. The physical facts, the car striking the utility pole on the south side of the street, strongly indicate that the Knowles automobile was in the extreme right portion of the road at the time of the accident, and that for the accident to have occurred the cab driven by Green must have been to the left of the center of the street.

The plaintiff, according to her testimony, received a severe blow by striking the dashboard at the time of the collision. She was treated by Dr. Read, a qualified physician, who testified that the plaintiff suffered a sprain of the neck and low back and that she had contusions of the chest as a result of the accident. He treated her on several occasions following the accident, these treatments being both for the injuries complained of as well as prenatal care. His bill for professional services was in the sum of $128.00 of which $98.00 was for the injuries resulting from the accident.

Dr. Henderson, also a qualified physician, testified that he treated the plaintiff for pain of the low back and neck; that the motion of plaintiff's neck was limited at the time of her first visit to him in June, 1961, and that traction was necessary to correct this limited motion of the neck. He testified further that though some of the plaintiff's pain in the back region was attributable to a female organic condition, some of it was also attributable to injuries as the result of the accident. His bill for professional services to the plaintiff was in the sum of $213.00.

The plaintiff testified that prior to the accident she was working for the approximate sum of $40.00 to $45.00 per week and since the accident she has been unable to work, and that she has suffered considerable pain since the accident for which medication is constantly necessary.

The appellant assigns as error, among other things, the following:

(1) The finding of the jury that appellants were guilty of any negligence was contrary to the overwhelming weight of the evidence.

(2) The damages allowed appellee are so excessive as to evince prejudice and passion on the part of the jury.

(3) The court erred in granting certain instructions to the plaintiff-appellee and refusing certain instructions to the appellants, Amos Green and B. F. Johnson, d/b/a Palace Taxi Cab Company.

██ ██ The first assignment of error is not well taken as the evidence of the plaintiff, if believed, was sufficient to fix the liability of Green and the taxi company as it establishes that Green was negligently driving too fast in a curve and taking too much of the street, resulting in the plaintiff's injuries. Admittedly the evidence is not strong, but we cannot say the verdict was against the overwhelming weight of the evidence as

there is only conflicting evidence to the contrary. ██ █ The appellant argues, however, that since Knowles, a party to the suit, testified positively that Green's cab was totally on Green's side of the street, Green was exonerated by this testimony and the liability of Knowles was established, as he was a party to the suit. The appellee relies upon the case of *Bradshaw v. Stieffel,* 230 Miss. 361, 92 So. 2d 565 (1957) to support this theory. We are of the opinion that the case referred to is not applicable here for the reason that Knowles' testimony is not positive and definite and further is disputed by the physical facts, thus differentiating it by the facts from the rule announced in *Bradshaw,* as there the evidence was positive and definite.

 █ The next assignment of error that the damages allowed the plaintiff are so excessive as to evince bias and prejudice on the part of the jury is not well taken as the undisputed testimony indicates that the plaintiff had medical bills in excess of $311.00; that she suffered considerable pain; that she has been unable to work since the accident on July 1, 1959, until the time of the trial in April, 1963, and that she incurred a loss of wages thereby. The jury had the right and duty to consider these elements of damage and under the circumstances we cannot say that the damages are excessive as the loss of wages alone is in excess of their verdict of $3,000.00.

 █ The final assignment of error is that the court erred in granting certain instructions to the plaintiff and refusing other instructions for the defendant. We have carefully considered each of the instructions and their relationship to each other, and when considered as a whole, we cannot say the jury was misled thereby. Certain of the instructions are ambiguous and ineptly drawn, and one is in error, yet we cannot say from the whole record that the verdict of the jury and the judgment based thereon resulted in a miscarriage of justice.

For this reason we are of the opinion that Miss. Rule 11 as follows, ''No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice'' is particularly applicable to this situation. We recognize that this rule should be applied with utmost caution and if we could find, in view of the error in the instruction, from the whole record any reasonable basis for a jury to exonerate the appellants of negligence proximately contributing to appellee's injuries, we would reverse the case. See *Brown v. Addington,* 233 Miss. 435, 102 So. 2d (1958) and 29 Mississippi Law Journal 381 et seq (1958). We find no such error, and since we are of the opinion that justice was done, the cause is hereby affirmed.

Affirmed.

*Lee, C. J., Ethridge, Brady and Inzer, JJ.,* concur.